BESHADA FARNESE LLP
Peter J. Farnese (State Bar No. 251204)
pjf@bfllplaw.com
11601 Wilshire Blvd, Ste 500
Los Angeles, CA 90025
Telephone:     855-935-5322
Facsimile:     310-388-1232

COOPER & DUNHAM LLP
Robert T. Maldonado (admitted *pro hac vice*)
Laura A. Alos (admitted *pro hac vice*)
Rmaldonado@cooperdunham.com
lalos@cooperdunham.com
30 Rockefeller Plaza
New York, NY 10112
Telephone:     212.278.0509
Facsimile:     212.391.0525

*Attorneys for Defendants TELEBRANDS CORP. and WALMART, INC.*

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| ALTAIR INSTRUMENTS, INC., a California corporation,<br><br>                    Plaintiff,<br><br>        vs.<br><br>TELEBRANDS CORP., a New Jersey corporation, DOES 1 through 10, and WALMART, INC.,<br><br>                    Defendants. | Case No. 2:19-cv-08967-SJO-JC<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT WALMART, INC.'S MOTION TO SEVER AND STAY**<br><br>Hearing<br>Date: March 16, 2020<br>Time: 10:00 a.m.<br>Ctrm: 10C<br><br>Hon. S. James Otero |

## I. INTRODUCTION

This is a patent infringement case, in which Plaintiff Altair Instruments, Inc. has accused Defendant Walmart, Inc. ("Walmart") of infringing U.S. Patent No. 6,241,739 ("the '739 Patent") through its sales of the DERMASUCTION Product, which is manufactured and sold by Defendant Telebrands Corp. ("Telebrands"), a New Jersey corporation. Walmart and Telebrands jointly move for an order to sever and stay of all of Altair's claims against Walmart, pursuant to the customer-suit rule.

The real dispute here is between Altair and Telebrands. Walmart is a customer of Telebrands, which is being indemnified by Telebrands. Accordingly, severing and staying Altair's claims against Walmart, a mere downstream customer of Telebrands, would allow the substantive issues to be resolved most efficiently by Telebrands and Altair.

## II. BACKGROUND

Telebrands is a direct response marketing company incorporated and headquartered in New Jersey. (Declaration of Mr. Bala Iyer ("Iyer Decl."), ¶3.) Telebrands is engaged in the business of marketing and selling a wide variety of consumer products through direct response marketing and through national retail stores. (Iyer Decl., ¶3.) For over thirty years, Telebrands has been a leading developer and marketer of consumer products. (Iyer Decl., ¶4.) One such product is a handheld skincare product that removes blackheads and unclogs skin pores which Telebrands markets under the trademark DERMASUCTION. (*Id.*) The DERMASUCTION product, which Telebrands designed, manufactures, and sells, is "a handheld skincare product that removes blackheads and unclog skin pores." (Iyer Decl., ¶4.) Walmart is the largest retail chain in the world, and is a customer of Telebrands. (Declaration of Mr. Andrew Schussler ("Schussler Decl."), ¶¶3, 4.) Telebrands is indemnifying Walmart in this action for DERMASUCTION products that Walmart has advertised and sold. (Iyer Decl., ¶8.)

On November 7, 2018, Altair filed suit against Walmart, accusing nearly 100 products of infringing the '739 Patent. *Altair Instruments, Inc. v. Walmart, Inc. et al.*, Case No. 2:18-cv-09461-R-FFM (C.D. Cal.) Altair did not identify Telebrands' DERMASUCTION product as an accused product in its Complaint. (Case 2:18-cv-09461-

R-FFM, Dkt. No. 1.) Altair moved to amend its Complaint to add hundreds of additional accused products, including the DERMASUCTION product, but that motion was denied. *Altair Instruments, Inc. v. Walmart, Inc.*, No. 2:18-CV-09461-R-FFM, 2019 WL 7166060 (C.D. Cal. Sept. 25, 2019). That case settled.

Thereafter, on November 16, 2018, Telebrands filed suit in the District of New Jersey for a declaratory judgment that no claim of the '739 Patent is infringed by Telebrands' DERMASUCTION product. *Telebrands Corp. v. Altair Instruments, Inc.*, Case No. 2:18-cv-16234-SDW-LDW (the "New Jersey Action"). On December 17, 2018, Altair filed a patent infringement suit in the United States District Court for the Central District of California, captioned *Altair Instruments, Inc. v. Telebrands Corp. et al.*, Civil No. 2:18-cv-10440 (C.D. Cal.) ("the California Action"), alleging infringement of the '739 Patent by the DERMASUCTION Product. On February 27, 2019, that court transferred the California Action to the District of New Jersey pursuant to the first-to-file rule. *See Altair Instruments, Inc. v. Telebrands Corp. et al.*, 2:19-cv-07452-SDW-LDW (D.N.J.) (the "Transferred Action").

In an effort to streamline the foregoing cases, the parties agreed to re-transfer the Transferred Action, which was only against Telebrands, to this Judicial District. (Case 2:18-cv-09461-R-FFM, Dkt. No. 61; Case 2:19-cv-07452-SDW-LDW, Dkt. No. 76-1.) The transfer was so-ordered on October 7, 2019. (Case 2:19-cv-07452-SDW-LDW, Dkt. No. 77.) The Transferred Action was assigned to this Court in November of 2019. (Dkt. No. 108.) On December 5, 2019, Altair filed a First Amended Complaint to include Walmart, Telebrands' customer, as a defendant. (Dkt. No. 112.)

### III. LEGAL STANDARD

A district court has "broad discretion to stay proceedings as an incident to its power to control its own docket." *Clinton v. Jones*, 520 U.S. 681, 706 (1997) (citing *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936)). A court may "find it ... efficient for its own docket and the fairest course for the parties to enter a stay of an action before it, pending resolution of independent proceedings which bear upon the case." *Leyva v. Certified Grocers of Cal.*,

3

1  *Ltd.*, 593 F.2d 857, 863 (9th Cir. 1979). The rule applies to judicial proceedings and does
2  not require the issues of such proceedings to be necessarily controlling of the action before
3  the court. *Id*. at 863–64. The proponent of a stay has the burden of proving that a stay is
4  justified. *Clinton*, 520 U.S. at 708.

5        In exercising its discretion in determining whether to grant a stay, a court must weigh
6  the competing interests of the various parties that may be affected by the decision to grant
7  or refuse to grant a stay. *Lockyer v. Mirant Corp.*, 398 F.3d 1098, 1110 (9th Cir. 2005).
8  Specifically, the court must consider: (1) the possible damage or harm to the non-moving
9  party which may result from granting a stay; (2) the hardship or inequity the moving party
10 may suffer in being required to go forward with the case if the request for a stay is denied;
11 and (3) "the orderly course of justice measured in terms of the simplifying or complicating
12 of issues, proof, and questions of law which could be expected to result from a stay." *Id*.
13 Regarding the second *Lockyer* factor, courts have held that there is no likelihood of damage
14 or harm to the non-moving party merely because a stay could cause a delay to the plaintiff
15 in receiving money damages. *See Bay Area Surgical Grp., Inc. v. Aetna Life Ins. Co.*, No.
16 5:13–CV–05430–EJD, 2014 WL 2759571, at *5 (N.D. Cal. June 17, 2014); *see also*
17 *Nussbaum v. Diversified Consultants, Inc.*, No. 15–CV–600, 2015 WL 5707147, at *2
18 (D.N.J. Sept. 28, 2015) ("Because delay results inherently from the issuance of a stay,
19 courts have found that mere delay does not, without more, necessitate a finding of undue
20 prejudice and clear tactical disadvantage.").

21       The Federal Circuit has observed that when a patent owner files suit against both an
22 upstream defendant and downstream distributors or retailers, the upstream defendant's case
23 generally takes precedence because the upstream defendant has a "greater interest in
24 defending its actions against charges of patent infringement" than a "customer who is a
25 reseller of the accused goods." *Two Moms & a Toy, LLC v. Int'l Playthings, LLC*, No. 10-
26 CV-02271-PAB-BNB, 2011 WL 5593178, at *4 (D. Colo. Nov. 17, 2011) (citation
27 omitted); *see also In re Nintendo Co., Ltd.*, 544 F. App'x 934, 941 (Fed. Cir. 2013) ("
28 'customer suit exception' ... endorses staying a case against a customer or retailer in light
   of the notion that the manufacturer is the 'true defendant.'"); *Katz v. Lear Siegler, Inc.*, 909

F.2d 1459, 1464 (Fed. Cir. 1990) ("litigation against or brought by the manufacturer of infringing goods takes precedence over a suit by the patent owner against customers of the manufacturer."). "At the root of the preference for a manufacturer's declaratory judgment action . . . is the recognition that, in reality, the manufacturer is the true defendant in the customer suit" *WP Banquet, LLC v. Lowe's Companies, Inc.*, No. 16-cv-02137, 2016 WL 4472933, at *3 (C.D. Cal. Aug 24, 2016) (quoting *Katz*, 909 F.2d at 1464). In addition, "it is a simple fact of life that a manufacturer must protect its customers, either as a matter of contract, or good business, or in order to avoid the damaging impact of an adverse ruling against its products." *Id.* (quoting *Katz*, 909 F.2d at 1464).

Pursuant to the following precedent, Telebrands and Walmart request that this Court exercise its discretion to sever and stay the claims related to Telebrands' DERMASUCTION product against Walmart. A stay would conserve party and Court resources while the central infringement and invalidity issues between Altair and Telebrands were resolved.

## IV.  ARGUMENT

### A.  The Court Should Sever And Stay Altair's DERMASUCTION Claims Against Walmart Until The Claims Are Resolved Against Telebrands, The Manufacturer

Traditionally, stays have been favored in cases involving suits against a customer in one court and the manufacturer in another. *See, e.g., Tile Tech, Inc. v. Appian Way Sales, Inc.*, No. C17-1660JLR, 2018 WL 2113958, at *2 (W.D. Wash. May 8, 2018). The Federal Circuit later extended the "customer suit" rule to cases in which a plaintiff alleges patent infringement against several defendants including both the alleged infringer and its customers. *See In re Nintendo Co.,* 544 F. App'x 934 (Fed. Cir. 2013); *WP Banquet, LLC v. Target Corp.*, LA CV16-02082, 2016 WL 9450448, at *5 (C.D. Cal. Dec. 15, 2016) (applying principles of *In re Nintendo* and granting motion to sever and stay patent infringement suit against defendant retailers so as to allow case to proceed against manufacturer); *Linksmart Wireless Tech. LLC v. Gogo Inc.*, No. LA 18-CV-03335, 2018 WL 8367609, at *2 (C.D. Cal. Sept. 18, 2018) (staying suits against the customer

defendants because doing so would be consistent with overall considerations of efficiency, judicial economy, and party resources).[1]

Here, Altair initially filed a Complaint against Telebrands, the manufacturer, and then later amended the Complaint to include Telebrands' customer, Walmart. As a downstream retailer, Walmart does not design, manufacture, or import the DERMASUCTION product. (Schussler Decl., ¶5.) In addition, Altair has not alleged that Walmart alters the design of the DERMASUCTION product after buying the product or any other facts beyond the mere offer for sale of the DERMASUCTION product. (Dkt. No. 112.) This is a clear-cut example of the type of lawsuit to which the customer-suit exception should be applied by this Court.

Indeed, not only does Walmart have little (if anything) substantive to add to discovery or the resolution of the critical issues in this case, it also has little stake in this case. It is Altair and Telebrands who will be litigating the issues of infringement and validity; core issues whose rulings would substantively impact the instant case. Notably, substantive information regarding the creation and development of the DERMASUCTION product and its packaging, the marketing of the DERMASUCTION product and its packaging, the manufacturing of the DERMASUCTION product, communications between Telebrands and third-parties regarding the product at issue, invalidity and non-infringement of the patent-in-suit, as well as financial and sales information related to the DERMASUCTION product are in the possession of Telebrands. (Iyer Decl., ¶¶6-7.)

---

[1] *See also, e.g.*, *Katz v. Lear Siegler, Inc.*, 909 F.2d 1459, 1463-64 (Fed. Cir. 1990) (stay appropriate where case against upstream defendant would resolve the "major issues" such as infringement and invalidity, which in turn would "resolve these issues as to their customers"); *In re Papst Licensing GmbH & Co. KG Litig.*, 767 F. Supp. 2d 1, 10 (D.D.C. 2011) (litigation against the manufacturer "takes precedence over a suit by the patent owner against customers," as "customers of the manufacturer" are mere "secondary parties"); *Victaulic Co. v. Romar Supply, Inc.*, No. 1:13-CV-03788-WSD, 2015 WL 1257432, at *3 (N.D. Ga. Mar. 18, 2015) (staying case against "distributors" that "merely sell" the accused products, so that "[r]ecovery from [the distributors] is dependent upon a resolution of the infringement and validity of the Patents, which is a focus of the litigation between [the plaintiff and the manufacturer]").

In addition, if Altair obtains a ruling of infringement and collects damages against Telebrands, Altair's damages claims against Walmart will be resolved in their entirety, for a patentee cannot receive a double recovery for the same sales. *See Transclean v. Jiffy Lube*, 474 F.3d 1298, 1303 (Fed. Cir. 2007) ("....a patentee may not sue users of a patented product for damages if he has collected actual damages from a manufacturer or seller and those damages fully compensate the patentee for infringement by users." *citing Birdsell v. Shaliol*, 112 U.S. 485, 488-89 (1884)); *see also Glenayre Elecs., Inc. v. Jackson*, 443 F.3d 851, 864 (Fed. Cir. 2006) (*citing Birdsell* and holding that a patentee could not sue users for damages because actual damages covering the use of the product had already been recovered from the manufacturer); *see also Telebrands*, 2014 WL 4930897, at *6 (staying the case and noting that the "concern of duplicative litigation is an unlikely scenario" because the plaintiffs "could be precluded from recovering from the Retail Defendants if they fully collect from the manufacturers"); *Intel Corp. v. ULSI Sys. Tech., Inc.*, 995 F.2d 1566, 156869 (Fed. Cir. 1993) (patentee can collect only one royalty for patent infringement).

Further, the efficiencies gained from a stay are even more pronounced here because Walmart will agree to any issues of law and fact determined by this Court with respect to infringement and invalidity. (Schussler Decl., ¶6.)  *See Katz v. Lear Siegler, Inc.*, 909 F.2d 1459, 1464 (Fed. Cir. 1990) (staying the case and considering that "resolution of the major issues" would "resolve the[] issues as to . . . customers"); *Shifferaw*, 2010 WL 1064380, at *3 (the agreement to be bound "weighs heavily towards a finding that adjudication of the claims against [the upstream defendant] would likely dispose of the rest of the case").  For the foregoing reasons, Walmart respectfully requests that the Court stay this action to serve the interests of efficiency and judicial economy.

### B. The *Lockyer* Factors Also Favor a Stay

Separately, Walmart contends that a stay is justified under the traditional analysis set forth in *Lockyer v. Mirant Corp.*, 398 F.3d 1098, 1110 (9th Cir. 2005).  First, the competing risks of harm favor a stay.  Prejudice to Altair will be minimal because the stay

will be of limited duration pending the adjudication of the issues of law and fact Altair and Telebrands present regarding infringement and invalidity. Moreover, Telebrands redesigned its DERMASUCTION product long ago, so that it is no longer infringing nor accused of infringement by Altair. (Declaration of Robert Maldonado, ¶3, Ex. 1.) Lastly, the early status of this case (discovery is in its earliest stages), favors staying the suit against Walmart as it would be consistent with overall considerations of efficiency, judicial economy, and party resources. *See Linksmart Wireless*, 2018 WL 8367609, at *2 (granting motion to stay cases against retailers pursuant to customer suit exception because of early case disposition, manufacturers' indemnification of customers, and resolution of issues against manufacturers appear likely to resolve same issues against customers).

By contrast, Walmart will likely suffer hardship if forced to continue with this action. Forcing Walmart to litigate would be an unnecessary strain on Walmart and this Court. Walmart is a large entity, and needlessly engaging in extensive discovery would unnecessarily complicate these proceedings. Indeed, the goal of the customer-suit exception is to "avoid, if possible, imposing the burdens of trial on the customer, for it is the manufacturer who is generally the 'true defendant' in the dispute." *In re Nintendo*, 756 F.3d at 1365; *see also Lockyer*, 398 F.3d at 1110. A stay will also serve the "orderly course of justice measured in terms of the simplifying or complicating of issues, proof, and questions of law." *Lockyer*, 398 F.3d at 1110. As detailed above, first litigating the dispute between Altair and Telebrands will address, among other things, whether the DERMASUCTION product infringes the '739 Patent, and will resolve all the major issues of law and fact presented here. Accordingly, the Court finds that a stay is warranted under *Lockyer*.

## V. CONCLUSION

This dispute can be resolved by Altair and Telebrands alone. Walmart is merely a peripheral party. There is no reason to litigate Altair's DERMASUCTION claims against Walmart when the issues of non-infringement and invalidity will be resolved by the litigation between Telebrands and Altair. As such, Telebrands and Walmart respectfully

requests the Court sever and stay Altair's claims against Walmart while the Court resolves the central infringement and invalidity issues between Altair and Telebrands.

DATED: February 21, 2020

Respectfully submitted,

BESHADA FARNESE LLP

By: /s/Peter J. Farnese
Peter J. Farnese
pjf@bfllplaw.com

COOPER & DUNHAM LLP
Robert T. Maldonado
(admitted pro hac vice)
Laura A. Alos
(admitted pro hac vice)
Rmaldonado@cooperdunham.com
lalos@cooperdunham.com
30 Rockefeller Plaza
New York, NY 10112
Telephone: 212.278.0509
Facsimile: 212.391.0525

*Attorneys for Defendants TELEBRANDS CORP. and WALMART, INC.*

**CERTIFICATE OF SERVICE**

I certify that on February 21, 2020, a true and correct copy of the foregoing was filed with the Court and served electronically. The Notice of Electronic Case Filing automatically generated by the system and sent to all parties entitled to service under the Federal Rules of Civil Procedure and the Local Rules of the Central District of California who have consented to electronic service shall constitute service of the filed document to all such parties.

I declare that I am employed by a member of the bar of this Court, at whose direction this service was made.

Executed on February 21, 2020 at Los Angeles, California.

/s/Peter J. Farnese